THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NATHANIEL McTUSH, Defendant-Appellant.

First District (3rd Division)   No. 77-128

Opinion filed June 7, 1978.

James Doherty, Public Defender, of Chicago (Ronald P. Alwin and Joseph A. Power, Jr., Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Kenneth T. McCurry, and Mary Ellen Cagney, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:
Nathaniel McTush was indicted for the offense of the unlawful use of weapons (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(7)) in that he possessed a shotgun with a barrel less than 18 inches in length. Following a jury trial, he was found guilty and was sentenced to a term of one to three years in the penitentiary. McTush appeals, raising two issues for review: (1) whether the defendant was deprived of a fair trial by testimony and argument, implying that the defendant was engaged in criminal activity other than that for which he was on trial; (2) whether the closing argument of the State violated his privilege against self-incrimination.

Sergeant John Sweeney and Officers Edward Meyer and Patrick McGreal of the Chicago Police Department testified for the State. All three officers were assigned to the Special Operations Unit, Area 2. On the evening of April 29, 1974, at approximately 10:30 p.m., the three officers were driving north in an unmarked police car in an alley located between Wolcott and Winchester Streets in Chicago and were approaching 66th Street. As the squad entered the intersection of the alley and 66th Street, they heard an explosion and saw a flash. They turned east on 66th Street and drove toward the area from which they heard the explosion. At that time, the officers observed two individuals located on the northeast corner of 66th Street and Wolcott. The individuals were later identified as Melvin Hannah and Nathaniel McTush, the defendant. Melvin Hannah is not a party to this appeal.

As the officers approached Hannah and McTush, they heard a metallic clicking sound and saw that one of the two men was carrying a shotgun. The officers pulled alongside Hannah and McTush, exited their vehicle and ordered the two men to put their hands up. The man with the shotgun in his right hand, identified as McTush, raised his left hand. Sergeant Sweeney then ordered him to raise his other hand, at which point McTush dropped the weapon.

Officer Richard Chenow, a firearms technician for the Chicago Police Department, also testified for the State. He stated that the barrel of the shotgun recovered from McTush on the night of April 29, 1974, was less than 18 inches in length. The defendant offered no witnesses.

As the initial ground for the reversal of his conviction, McTush contends that he was deprived of a fair trial by certain testimony and argument which the State presented to the jury that suggested that McTush was engaged in other criminal activity at the time he was apprehended. This issue arises from certain testimony by Officer McGreal and the subsequent use of that evidence by the State in its closing argument. On cross-examination McGreal stated that the Special Operations Unit to which he was assigned, was an "assist" unit and that the officers of that unit received "simulcasts" of "in progress calls." On redirect examination, McGreal stated that "in progress calls" relate to felony calls which include burglaries, robberies and shootings.

During its closing argument the State emphasized the serious nature of the charge against McTush and the duty of the jury to return a guilty verdict if such a verdict was supported by the evidence. The following comments were made:

"Think about it [Defense Counsel] are asking you to give [McTush] a break; to let him go.

I ask you to think about 66th and Wolcott at 10:30 at night on April 29th, 1974, as that man walked along the streets of Chicago with this cocked and loaded shotgun.

Would he give one of those people a break?"

An objection by defense counsel was sustained. The State also addressed itself to the question of the credibility of the police officers, as follows:

"And did you hear about what [the officers] do for a living? Did you hear about Officer McGreal? He responds to simulcasts. He told you what the simulcasts were; radio messages.

What type of calls in particular did he respond to? He, Officer Meyers, and Officer Sweeney, what do they respond to? In progress calls; in progress calls of what? Armed robberies, burglaries, shootings.

Now those officers, you saw them, you believed them.

If you were in the midst of a burglary or an armed robbery, or

someone shooting at you, wouldn't you want three officers just like them to come to your aid and assistance to do their duty? And you know that they would do their duty and stop and save your life, or save your home, or protect your person."

In rebuttal the State again addressed the issue of the credibility of the officers:

"What reason do they have to lie? It's 10:00 o'clock at night; they are officers that operate in a high crime area, looking for armed robberies, robberies committed with a sawed-off shotgun (indicating the weapon).

[Defense Counsel]: Objection.

THE COURT: Sustained.

[State]: Burglaries.

THE COURT: Sustained.

[The State]: Judge, I believe they answered simulcasts of armed robberies.

THE COURT: You may argue as to the testimony, counsel.

[The State]: And home invasions, and people being shot with weapons like this (indicating the weapon).

[Defense Counsel]: Objection, Judge.

[Second Defense Counsel]: Objection.

THE COURT: Sustained."

■■ ■ We find no error with respect to the redirect examination of McGreal. Defense counsel, in exploring the purpose of the Special Operations Unit on cross-examination, introduced the subject of the simulcast calls, thus the State had the right to interrogate the witness on the same subject during the redirect examination; a subject may be discussed during redirect if it was introduced during the preceding cross-examination. (*People v. Howell* (1977), 53 Ill. App. 3d 465, 368 N.E.2d 689.) While evidence which implies that the accused has engaged in other criminal activity is inadmissible where the only value of such evidence is to create an inference that the defendant has a propensity to commit crimes (*People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506; *People v. Trejo* (1976), 40 Ill. App. 3d 503, 352 N.E.2d 68) this rule does not control the disposition of this issue. The mere fact that certain testimony could be interpreted as inferring that the defendant was engaged in other criminal activity does not make the admission of that testimony per se erroneous. (See *People v. Guyton* (1972), 53 Ill. 2d 114, 290 N.E.2d 209.) The testimony in the instant case was on a subject which the defendant, himself, had introduced. Within the context of the examination during which the statements were elicited, it is clear that the statements refer to the operation of the special police unit and not to the conduct of the defendant. We, therefore, conclude that the statements of which McTush

complains "did not have the effect of connecting the defendant with other crimes." *People v. Guyton* (1972), 53 Ill. 2d 114, 119.

We also conclude that the State did not make an improper reference to other criminal activity in its closing argument. In summation, the State is permitted to comment upon all facts which have been properly admitted into evidence and may draw all reasonable inferences from those facts. (*People v. Johnson* (1976), 35 Ill. App. 3d 666, 341 N.E.2d 443; *People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153.) In addition, the prosecution may "delve into the evil effects of crime, to urge the fearless enforcement of the criminal laws, or to remark upon the conduct of the accused." *People v. Holmes* (1976), 41 Ill. App. 3d 956, 965, 354 N.E.2d 611.

Having failed to find error, either in the redirect examination of Officer McGreal or in the State's closing argument with respect to inferences of other criminal conduct by McTush, we reject the first issue he raises.

McTush also asserts that, in argument, the State impinged upon his constitutional right to remain silent. During its closing argument, the State made the following comments:

"This is the evidence. The issue is whether or not he had the gun, and this is the evidence.

And that evidence, ladies and gentlemen, is undenied and uncontradicted from that witness stand.

[Defense Counsel]: Objection, Judge.

THE COURT: Overruled.

[The State]: This is the evidence. Talk about the scale of justice. This is the evidence; undenied, uncontradicted.

[Defense Counsel]: Objection.

[Second Defense Counsel]: Objection.

THE COURT: Once is enough."

McTush asserts that by characterizing the evidence as "undenied and uncontradicted," the State improperly emphasized the fact that he had failed to testify.

■■ Both the Federal Constitution (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229) and the Illinois Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 155—1) prohibit the prosecution from making any reference to a defendant's decision not to testify in his own defense. The restriction, however, does not prevent the State from commenting upon the uncontradicted nature of the evidence even though the defendant is the only person in a position to contradict the State's evidence. (*People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283; *People v. Jackson* (1978), 56 Ill. App. 3d 1059, 372 N.E.2d 970.) The test to be applied in determining whether the prosecutor's argument falls within the prohibited area of comment is whether "the reference [was] intended or

calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify." *People v. Hopkins* (1972), 52 Ill. 2d 1, 6.

■■ We do not feel that, in the present case, the prosecutor's comments unduly directed the jury toward the failure of McTush to testify. Instead, the comments appeared to be directed at the failure of the defendant to present any substantial evidence refuting the State's case. (See *People v. Salazar* (1976), 37 Ill. App. 3d 800, 347 N.E.2d 86; *People v. Cook* (1975), 31 Ill. App. 3d 363, 334 N.E.2d 834.) Moreover, in exercising its discretionary control over the form and substance of the closing argument, the trial court prohibited the State from making the comment more than one time. Under these circumstances, we feel that no error has been committed.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

McNAMARA and SIMON, JJ., concur.