THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MORLAND STEELE, Defendant-Appellant.

Second District   No. 83—209

Opinion filed May 22, 1984.—Rehearing denied July 3, 1984.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

The defendant, Morland Steele, appeals from his convictions of two counts of indecent liberties with a child (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(a)(3)). He raises three assignments of error in this court: (1) that the State's failure to establish beyond a reasonable doubt that the incident in question occurred on the date specified in the bill of particulars constituted a fatal variance entitling him to a reversal of his conviction; (2) that letters from the State's Attorney's office advising the State's witnesses that they had no obligation to talk to anyone constituted a thinly veiled obstruction of communication between defense counsel and the witnesses, and that the trial court's failure to apply sanctions for the misconduct amounts to reversible error; and (3) that

the trial court committed reversible error when it allowed the defendant to be impeached by the use of a prior misdemeanor conviction. We affirm.

The indictment, filed on August 20, 1982, alleged that on or about May 8, 1982, the defendant lewdly fondled J.S. and K.M., who were both under the age of 16. In a bill of particulars which the State filed on August 23, 1982, the prosecutor claimed that the offenses took place at 6:30 p.m. on May 8, 1982, at a Clark gas station located on Highland Avenue in Elgin, Illinois. An amended bill of particulars, which the State filed 10 days prior to trial on November 8, 1982, stated that the crimes occurred between 3 and 4 p.m. on May 5, 1982.

On October 2, 1982, the defendant filed a motion which requested dismissal of the indictment or other less drastic relief due to the refusal of two prosecution witnesses to speak with the defendant's investigators. The motion alleged that the witnesses refused to cooperate as a result of a letter the Kane County State's Attorney's office sent to each of them. The letters in question stated, in part, that potential witnesses had "no obligation to talk to anyone" if they did not wish to do so and that the witnesses had the right to have someone from the State's Attorney's office present during any questioning session.

At the hearing on the motion, the prosecutor stipulated that the office of the State's Attorney sent copies of the letter to the mothers of the two complaining witnesses sometime after the return of the indictment and before personnel from the office of the public defender contacted the mothers. Both mothers related that they received the letters in August 1982 and then refused to speak with the public defender's investigator. Bonnie Van Wembeke, the mother of K.M., stated that she was never told not to talk with personnel from the public defender's office. After hearing the testimony summarized above, the trial court denied the defendant's motion for dismissal or other sanctions.

The cause proceeded to a bench trial on November 18, 1982. In his opening statement at trial, the State's Attorney remarked that although the indictment alleged that the offenses took place on May 8, the events actually occurred on the afternoon of May 5. Subsequently, defense counsel advised the court that he had neglected to notice the change in date on the amended bill of particulars, changing the alleged offense from a Saturday to a Wednesday. He therefore advised that he had entered into a stipulation with the State's Attorney essentially setting forth that "as far as May 5th is concerned, we are asserting an alibi defense."

Eleven-year-old J.S. testified that after school on the afternoon of May 5, 1982, she and a number of friends, including K.M. and H.M.,

the younger sister of K.M., went to the Clark gas station located on Highland Avenue in Elgin to have a friend's bicycle tire repaired. After entering the gas station office, J.S. spoke with the defendant, with whom she was acquainted. According to the witness, the defendant took her into a back room and told her that if she gave him a kiss, he would give her a candy bar. She agreed and went to give defendant a kiss on the cheek, at which time he grabbed her "[i]n the upper private." Then he gave J.S. a kiss and squeezed her breast; she struck him on the arm and ran outside. The witness told her mother about the incident five days later.

J.S. saw K.M. go to the back room with the defendant and testified that H.M. kissed the defendant at the front counter; both K.M. and H.M. had candy bars. J.S. related that K.M. told her what had happened in the back room. J.S. also stated during cross-examination that she did not remember the particular date of the incident.

Ten-year-old K.M. related that she and her friends went to the Clark station on May 5. The witness stated that, after she entered the back room, the defendant grabbed her in the genital area. She did not tell anyone about the incident until a couple of days later, when the mother of J.S. telephoned K.M.'s home.

K.M. testified during cross-examination that the day in issue fell on a weekend and was not a school day. She observed J.S. enter the back room, and stated that J.S. told her, within one hour of leaving the station, that the defendant had kissed her.

H.M., aged eight, testified that the defendant offered to give her a candy bar on the condition that she would kiss him. She recounted that the defendant grabbed her and kissed her and then touched her in the genital area. She tried to pull away from him and called out for J.S. According to the witness, when J.S. entered the back room, the defendant released H.M. Then H.M. went outside, cried and told J.S. what had happened. H.M. could not remember whether the incident occurred on a school day; however, her sister told her the event took place five days before May 9, the Sunday on which their mother was married.

The defendant testified on his own behalf. He denied that he put his hands on the girls, that he gave them candy, or that he had them in the back room of the gas station. He stated that he saw J.S. at 4 p.m. on May 8 when she came to the station where he was working. According to the defendant, J.S. told him she wanted to buy cigarettes for her mother; he responded only that she needed a note. In addition, he said that no other children accompanied J.S. to the station, although his seven-year-old son was there with him. At 5 p.m. that day J.S., her

mother and a man visited the station and accused him of committing the instant offenses; he was arrested a short time later.

The defendant related further than he was a 29-year-old married man with four children. He worked full-time for the Illinois Department of Transportation as a surveyor and worked part-time at the Clark station on weekends only. He testified that he did surveying work on May 5, a Wednesday, and was not in Elgin.

The parties entered into a stipulation that the Illinois Department of Transportation employed the defendant on May 5, 1982, from 7 a.m. to 5:30 p.m. and that the defendant did not work at the Clark station that day. Also, the trial court allowed into evidence, for impeachment purposes and over defense counsel's objection, a certified copy of the defendant's 1981 conviction of contributing to the sexual delinquency of a child, a Class A misdemeanor.

On November 24, 1982, the trial court found the defendant guilty as charged. Thereafter, the defendant filed a post-trial motion, which the trial court denied. On February 25, 1983, the court sentenced the defendant to a three-year term of probation, a condition of which was that he attend twice-weekly counseling sessions. The defendant filed a timely notice of appeal.

Defendant first contends that a fatal variance existed between the date of the offenses which the State included in its amended bill of particulars and the proof presented at trial concerning the date on which the offenses occurred. In his view, the State must conform its proof strictly to the date contained in the amended bill of particulars, and the prosecution's failure to do so constituted a fatal variance which prejudiced the defendant by hampering him in the preparation of his defense.

■■■ The purpose of a bill of particulars is to supplement a sufficient indictment in order to inform the accused more fully of the nature of the charge against him and to enable him to present his defense in a better manner. (*People v. Noll* (1982), 109 Ill. App. 3d 306, 308, 440 N.E.2d 335; *People v. Simental* (1973), 11 Ill. App. 3d 537, 542, 297 N.E.2d 356; *People v. Custer* (1972), 11 Ill. App. 3d 249, 256, 296 N.E.2d 753.) The bill of particulars also limits the evidence which the prosecution may introduce (*People v. Noll* (1982), 109 Ill. App. 3d 306, 308, 440 N.E.2d 335; *People v. Long* (1978), 65 Ill. App. 3d 21, 23, 382 N.E.2d 327), but the date specified in the bill of particulars does not necessarily preclude the State from offering proof that the offense was in fact committed on a slightly different date (*People v. Custer* (1972), 11 Ill. App. 3d 249, 256, 296 N.E.2d 753). The indictment, not the bill of particulars, is the charge upon which the defendant is tried. The

object of the bill of particulars is not to make a substantial charge against the accused, but to limit to particular transactions the evidence which may be introduced under the indictment. The indictment, which forms the charge, can neither be helped nor hurt by the bill of particulars. *People v. Westrup* (1939), 372 Ill. 517, 518-19, 25 N.E.2d 16, *cert. denied* (1940), 310 U.S. 642, 84 L. Ed. 1410, 60 S. Ct. 1089.

■ It is generally held that a variance between the date of the crime specified in the bill of particulars and the date proved at trial does not constitute reversible error unless the date is an essential ingredient of the crime or relates to the running of the statute of limitations. (*People v. Simmons* (1982), 105 Ill. App. 3d 402, 405, 434 N.E.2d 435; *People v. Custer* (1972), 11 Ill. App. 3d 249, 257, 296 N.E.2d 753.) Some cases have established an exception to the general rule where the inconsistency is so substantial that it misled the defendant in the preparation of his defense (*People v. Long* (1978), 65 Ill. App. 3d 21, 23, 382 N.E.2d 327; *People v. Nickson* (1978), 58 Ill. App. 3d 470, 479, 374 N.E.2d 804; see *People v. Noll* (1982), 109 Ill. App. 3d 306, 308, 440 N.E.2d 335), or where an alibi defense has been used to counter the time or date specified in the bill of particulars, since in such a case the defendant may have been misled into failing to gather evidence and witnesses regarding the time and the date the State actually proved. *People v. Noll* (1982), 109 Ill. App. 3d 306, 308, 440 N.E.2d 335; *cf. People v. Petropoulos* (1965), 59 Ill. App. 2d 298, 323-24, 208 N.E.2d 323, *aff'd* (1966), 34 Ill. 2d 179, 214 N.E.2d 765.

With respect to the offense of indecent liberties with a child, the date of the crime is not an essential element of the charge. (See, *e.g., People v. Schmidt* (1957), 10 Ill. 2d 221, 139 N.E.2d 726.) Additionally, there is no statute of limitations question implicated in the present case. Thus, it is clear that under the general rule no reversible error has been established. Nevertheless, we believe further inquiry is necessary to determine whether the inconsistency here was so substantial that it misled the defendant in the preparation of his defense. Defendant asserts that he was prejudiced for the reason that he offered an alibi defense for the precise date and time contained in the amended bill of particulars. We conclude that defendant's allegation of prejudice lacks support in the record.

Initially, we emphasize that the indictment alleged that the two counts of indecent liberties with a child occurred "on or about May 8, 1982." The original bill of particulars also specified that the offenses took place on May 8. While the amended bill of particulars stated that the offense occurred on May 5, 1982, at trial defense counsel admitted that he "neglected to pick up the change in the date." Thus, it is appar-

ent that the defense in the case up until that point was premised upon the date of the offense being May 8, 1982. Further, while defendant did offer an alibi as to the May 5 date, his defense encompassed both the weekend before that date and the weekend after. At trial, defendant testified that he worked the weekend before but did not see the complaining witnesses at that time. He also testified he worked the weekend after, on May 8, 1982, and that J.S. came in that day to buy cigarettes but was told that she needed a note. He stated that she came in alone, that his seven-year-old son was sitting with him behind the counter, and that he did not commit the instant offense. He denied ever having seen either K.M. or H.M.

■■ Given this testimony, it is clear that defendant did not rely primarily on an alibi defense to rebut the charges, but relied upon his testimony that he did not commit the offenses on either May 5 or May 8. Therefore, he was not misled into failing to gather evidence and witnesses regarding the time frame actually proved by the State. (*People v. Noll* (1982), 109 Ill. App. 3d 306, 308-09, 440 N.E.2d 335.) We note that the testimony of the three minor witnesses at trial was inconclusive regarding the date the instant offenses occurred. Testimony was adduced that the crimes occurred on Wednesday, May 5, while other evidence established that the offenses took place on a weekend. Although J.S. initially testified that the incident in issue occurred during the afternoon of May 5, 1982, on cross-examination she related that she could not recall the particular date or day of the week of the occurrence. Also, K.M. recounted originally that the incident transpired on May 5, but later, on two occasions during cross-examination, she stated that the day in question fell on a weekend, not a school day. H.M. had no personal recollection of the date. Given these circumstances, we think the date of the occurrence was merely a question of fact for the trial court. (*People v. Martin* (1983), 115 Ill. App. 3d 103, 107, 449 N.E.2d 1039.) We conclude that any variance between the date specified in the bill of particulars and the proof adduced at trial did not amount to reversible error.

■■ ■ Next defendant asserts that the prosecutor engaged in unethical conduct when he notified two potential witnesses by letter that they had no obligation to speak with anyone representing the accused if they did not wish to do so and that they had the right to have someone present from the State's Attorney's office during any interview. Defendant asserts that this message constituted an obstruction of communication between defense counsel and the witnesses and that the trial court committed reversible error in refusing the defendant's request that the court impose certain sanctions against the prosecution.

We disagree.

The well-established rule in this State is that the defendant is entitled to a list of the prosecution's witnesses (Ill. Rev. Stat. 1981, ch. 38, par. 114—9(a)), and he may contact the witnesses in preparation of his case. (*People v. Jackson* (1969), 116 Ill. App. 2d 304, 315, 253 N.E.2d 527.) Further, under Supreme Court Rule 415(a) (87 Ill. 2d R. 415(a)), the prosecutor is prohibited from advising persons having relevant information to refrain from discussing the case with defense counsel (*People v. Wickenhauser* (1979), 75 Ill. App. 3d 145, 149, 393 N.E.2d 1185) or from otherwise depriving the defense of a fair opportunity for an interview (*People v. Jackson* (1969), 116 Ill. App. 2d 304, 315, 253 N.E.2d 527). However, notwithstanding Rule 415(a), a witness for the prosecution is not obligated to grant an interview to defense counsel (*People v. Craig* (1979), 79 Ill. App. 3d 584, 590, 399 N.E.2d 168; *People v. Peterson* (1979), 70 Ill. App. 3d 205, 209, 387 N.E.2d 951; *People v. Peter* (1973), 55 Ill. 2d 443, 451, 303 N.E.2d 398), and the prosecuting attorney may inform the witness of this fact (*People v. Jackson* (1969), 116 Ill. App. 2d 304, 315, 253 N.E.2d 527; see *People v. Fuller* (1983), 117 Ill. App. 3d 1026, 1032, 454 N.E.2d 334).

■ In the present case, the State's Attorney advised the potential witnesses that they had a right (1) to decline to speak with an investigator or attorney representing the defendant and (2) to have someone from the State's Attorney's office present during the interview or conversation. This advice was legally accurate and did not constitute error. (See, *e.g., People v. Fuller* (1983), 117 Ill. App. 3d 1026, 1032, 454 N.E.2d 334.) Thus, the trial court's refusal to accede to the defendant's request for sanctions was fully justified.

■ The defendant's last contention is that the trial court committed reversible error when it allowed the State to introduce as impeachment evidence the defendant's 1981 misdemeanor conviction of contributing to the sexual delinquency of a child, a Class A misdemeanor. (Ill. Rev. Stat. 1979, ch. 38, pars. 11—5(a)(3), 11—5(c).) The conviction was admitted over defendant's objection. The State responds that this issue was waived because defendant failed to include it in his post-trial motion for a new trial. Alternatively, the State argues that any error which occurred was harmless.

Defendant's failure to include this issue in his post-trial motion waives the issue for review since it does not relate to the sufficiency of the evidence to sustain defendant's convictions. (See *People v. Gutierrez* (1982), 105 Ill. App. 3d 1059, 1063, 433 N.E.2d 361; *People v. Christiansen* (1981), 96 Ill. App. 3d 540, 542, 421 N.E.2d 570; *People v. Meitz* (1981), 95 Ill. App. 3d 1033, 1035, 420 N.E.2d 1119.) Errors

which have not been preserved properly for review may be considered under Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)) in cases where the evidence is closely balanced or the error was of such magnitude that the accused was denied a fair trial (*People v. Lucas* (1981), 88 Ill. 2d 245, 251, 430 N.E.2d 1091; *People v. Carlson* (1980), 79 Ill. 2d 564, 576-77, 404 N.E.2d 233; *People v. Pickett* (1973), 54 Ill. 2d 280, 283, 296 N.E.2d 856), or where the error was so flagrant that it threatened deterioration of the judicial process (*People v. Roman* (1981), 98 Ill. App. 3d 703, 707, 424 N.E.2d 794; *People v. Anderson* (1981), 95 Ill. App. 3d 492, 494, 420 N.E.2d 830; *People v. Alvarez* (1981), 93 Ill. App. 3d 111, 117, 416 N.E.2d 1217). We have reviewed the record in the instant case and conclude that the trial court erred in allowing the defendant's prior misdemeanor conviction into evidence as impeachment. The conviction was not punishable by death or imprisonment in excess of one year, nor did it involve a crime of dishonesty or false statement. (See *People v. Yost* (1980), 78 Ill. 2d 292, 399 N.E.2d 1283; *People v. Montgomery* (1971), 47 Ill. 2d 510, 519, 268 N.E.2d 695; *People v. Evans* (1981), 92 Ill. App. 3d 874, 877, 416 N.E.2d 377.) However, in light of the substantial evidence of defendant's guilt, we do not believe the error constituted plain error under Supreme Court rule 615(a) (87 Ill. 2d R. 615(a)). We note that defendant has not challenged the sufficiency of the evidence against him. It was undisputed that defendant knew J.S. prior to the incident in question and thus there was no question as to the identity of the perpetrator. Additionally, two other victims related similar occurrences, and defendant admitted to having been at the Clark station during the time period in question. Further, the trial court based its determination of guilt upon the credibility of the victims and specifically found their testimony to be clear and convincing. In reaching this result, the trial court did not comment upon the credibility of the defendant as a witness. Under these circumstances, we conclude that the error was harmless.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

SEIDENFELD, P.J., and REINHARD, J., concur.